IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31780-3-III |
| Appellant, | ) | (Consolidated with |
| | ) | No. 31781-1-III) |
| v. | ) | |
| | ) | |
| JEREMIAH JAMES HODGINS, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — The State appeals the trial court's refusal to count prior

misdemeanor convictions for repetitive domestic violence offenses towards Jeremiah

Hodgins' offender score in sentencing him for felony domestic violence offense

convictions in 2013. The challenge requires us to construe amendments to RCW

9.94A.525 and 9.94A.030 made in 2010.

We conclude, as have the other two divisions of our court, that a felony domestic

violence offender's offender score is properly increased under RCW 9.94A.525(21)

where the present conviction constitutes "domestic violence" as defined by either RCW

10.99.020 or RCW 26.50.010. *See State v. Kozey*, 183 Wn. App. 692, 334 P.3d 1170

(2014), *review denied*, 182 Wn.2d 1007, (2015); *State v. McDonald*, 183 Wn. App. 272,

333 P.3d 451 (2014). We reverse the sentences imposed in these consolidated cases and

remand for resentencing consistent with this opinion.

FACTS AND PROCEDURAL BACKGROUND

In two separate criminal cases, consolidated on appeal, the State charged Jeremiah

Hodgins with seven counts of felony domestic violence violation of a protection order.

The first case involved a single count and was based on Mr. Hodgins' presence in the

home of the protected person on the morning of February 20, 2013. The second case,

involving the remaining six counts, was based on telephone calls that Mr. Hodgins made

to the protected person from the Yakima County Jail after he was arrested for the first

violation.

Mr. Hodgins agreed to plead guilty to one count of felony violation of a protection

order in each case. But on the date set for entering his plea, a dispute came to light over

the proper calculation of his offender score in light of 2010 amendments to the

Sentencing Reform Act of 1981, chapter 9.94A RCW, under which prior misdemeanor

convictions sometimes count toward an offender score where a conviction is for a felony

domestic violence offense. Mr. Hodgins' then-prior criminal history included three

misdemeanor convictions: two domestic violence no contact order violations and a fourth

degree domestic violence assault. The State calculated Mr. Hodgins' offender score in

each case as "4" based on his three prior misdemeanor convictions and his other current

offense. The defense argued that the offender score enhancement did not apply and that

Mr. Hodgins' offender score should be a "1," based solely on his other current felony

2

offense. The issue of whether the prior misdemeanor convictions should be counted toward his offender score was scheduled for hearing.

Before 2010, RCW 9.94A.525 did not include any special provisions for calculating the offender score where conviction was for a felony domestic violence offense. Under the general offender score calculation provisions of the statute, misdemeanor convictions were not counted.

In 2010, the statute was amended to include a new subsection (21), which provides in relevant part as follows:

> If the present conviction is for a felony domestic violence offense where domestic violence as defined in RCW 9.94A.030 was plead and proven . . . count points as follows:
>
>     . . . .
>     (c) Count one point for each adult prior conviction for a repetitive domestic violence offense as defined in RCW 9.94A.030, where domestic violence as defined in RCW 9.94A.030, was plead and proven after August 1, 2011.

LAWS OF 2010, ch. 274, § 403, at 2208; RCW 9.94A.525. A new definition of "repetitive domestic violence offense" was added to RCW 9.94A.030 that included non-felony domestic violence assaults under RCW 9A.36.041 and non-felony domestic violence violations of no contact or protective orders under chapters 10.99, 26.09, 26.10, 26.26, or 26.50 RCW. LAWS OF 2010, ch. 274, § 401(39)(a)(i)-(iii), at 2199; former RCW

3

No. 31780-3-III
(Consolidated with 31781-1-III)
*State v. Hodgins*

9.94A.030(40)(a)(i)-(iii) (2010).[1] Collectively, the changes meant that certain convictions for misdemeanor domestic violence offenses would count toward the offender score, the key being whether, for the present offense, "domestic violence as defined in RCW 9.94A.030 was plead and proven." RCW 9.94A.525(21).

A new definition of "domestic violence" was added to RCW 9.94A.030, defining the term as "ha[ving] the same meaning as defined in RCW 10.99.020 and 26.50.010." LAWS OF 2010, ch. 274, § 401 at 2194; RCW 9.94A.030(20). As pointed out by Mr. Hodgins, the 2010 legislation was the first time a Washington statute had defined "domestic violence" as having "the same meaning as defined in RCW 10.99.020 and 26.50.010." Br. of Resp't at 7, 9. Those two provisions take different approaches to defining domestic violence.[2]

RCW 10.99.020 is a provision of Title 10, dealing with criminal procedure, and includes a nonexclusive list of 23 crimes that constitute domestic violence "when committed by one family or household member against another." RCW 10.99.020(5). Among the crimes listed are assaults, rape, kidnapping, several property crimes, stalking, interference with the reporting of domestic violence, and—relevant here—violation of

---

[1] *Recodified as* RCW 9.94A.030(41).

[2] Mr. Hodgins' brief identifies 16 statutes that rely solely on the definition of "domestic violence" in RCW 10.99.020 and 13 that rely solely on the definition of "domestic violence" in RCW 26.50.010. Br. of Resp't at 18-19 & ns. 5 & 6.

4

the provisions of certain restraining orders, no contact orders, or protection orders. RCW 10.99.020(5)(a)-(w).

RCW 26.50.010 is a provision of Title 26 (Domestic Relations), chapter 26.50 (Domestic Violence Prevention) and defines "domestic violence" in general terms, as meaning

> (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.

Given the different approaches of the two definitions, each is both more inclusive than the other and less inclusive than the other, in differing respects. The parties' dispute at sentencing was over whether the definition of "domestic violence" in RCW 9.94A.030(20) should be read to include only those acts that fall within both definitions (the defense view), or all acts falling within either definition (the State's view).

After hearing argument, the trial court ruled from the bench that "there must be some allegation pled [sic] and proved of violence of some sort, not just a violation of protective order," explaining that it viewed the legislature as seeking to punish domestic violence, "and simply calling someone up on the phone isn't that type of activity that would warrant an extra point for sentencing purposes." Report of Proceedings (RP) at 36-37. In a letter sent to counsel the following day, the trial court elaborated:

5

This court interprets the word "and" in RCW 9.94A.030(20) as meaning "and." Therefore, if a defendant's conduct does not amount to domestic violence under *both* RCW 10.99.020 and 26.50.010, then it is not "domestic violence" pursuant to RCW 9.94A.030(20). Because a violation of a restraining order does not constitute domestic violence under RCW 26.50.010, this court concludes that a violation of a restraining order does not constitute "domestic violence" for purposes of RCW 9.94A.030(20).

Because the present convictions are for violations of restraining orders, not for "domestic violence" as defined by RCW 9.94A.030, RCW 9.94A.525(21) does not authorize adding points to Mr. Hodgins' offender score for his prior misdemeanor convictions. As a result, Mr. Hodgins' offender score is 1.

Clerk's Papers (CP) at 15-16.

The State appeals the court's offender score ruling and the judgment and sentences entered in both cases.

## ANALYSIS

RCW 9.94A.525(21), enacted in 2010, is conditional: an offender score is increased for the types of prior convictions enumerated in subsections (a) through (c) if (and only if) the present conviction is a felony for which "domestic violence as defined in RCW 9.94A.030 was plead[ed] and proven." The parties agree that the State did not plead and prove that Mr. Hodgins's present convictions were "domestic violence" within the meaning of both RCW 10.99.020 and RCW 26.50.010. The issue of statutory construction as argued by the parties is whether the legislature intended RCW 9.94A.030(20)'s new definition of "domestic violence" to include all acts falling within

6

either of the preexisting statutory definitions, or only the subset of acts that fell within both.

The meaning of a statute is a question of law, reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our fundamental objective in interpreting a statute is to ascertain and carry out the legislature's intent. *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004). If the statute's meaning is plain on its face, the court must give effect to that plain meaning as an expression of legislative intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10. The plain meaning of a statute is gleaned from "'all that the Legislature has said in the . . . related statutes which disclose legislative intent about the provision in question.'" *State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004) (alteration in original) (quoting *Campbell & Gwinn*, 146 Wn.2d at 11)). Only if a statute remains ambiguous after a plain meaning analysis may this court resort to additional canons of statutory construction or legislative history. *Campbell & Gwinn*, 146 Wn.2d at 12.

Mr. Hodgins contends—and the trial court agreed—that because RCW 9.94A.030(20) uses the word "and," both statutory definitions referenced must be met for RCW 9.94A.525(21) to apply. It is generally presumed that use of the word "and" in a statute indicates the legislature's intent that two provisions be applied conjunctively, while use of the word "or" indicates an intent that the provisions be applied disjunctively.

7

*State v. Tiffany*, 44 Wash. 602, 603-04, 87 P. 932 (1906); *State v. Irizarry*, 111 Wn.2d 591, 602, 763 P.2d 432 (1988) (Callow, J., concurring and dissenting). Yet "[a]uthorities agree that *and* has a distributive (or several) sense as well as a joint sense." BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 639 (3d ed. 2011). Accordingly, it is well settled that "the conjunctive 'and' and the disjunctive 'or' may be substituted for each other if it is clear from the plain language of the statute that it is appropriate to do so." *Bullseye Distrib., LLC v. Gambling Comm'n*, 127 Wn. App. 231, 239, 110 P.3d 1162 (2005); *Mount Spokane Skiing Corp. v. Spokane County*, 86 Wn. App. 165, 174, 936 P.2d 1148 (1997); *Guijosa v. Wal-Mart Stores, Inc.*, 101 Wn. App. 777, 790, 6 P.3d 583 (2000), *aff'd by Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907 (2001); *see also* 1A Norman J. Singer, *Sutherland Statutory Construction* § 21.14 (5th ed. Supp. 1996) ("The literal meaning of these terms ["and" and "or"] should be followed unless it renders the statute inoperable or the meaning becomes questionable."). Thus, the word "and" is "frequently interpreted by courts to mean 'or'" where doing so is necessary to avoid absurd results. *State v. Keller*, 98 Wn.2d 725, 729, 657 P.2d 1384 (1983).

In *Keller*, for example, the court interpreted "and" to mean "or" in a statute setting forth the conditions under which a person could obtain a conditional release from a state mental institution. *Id.* at 728-29. Similarly, this court held in *Mount Spokane* that a public corporation was not required to undertake all of the functions listed in a statute in

8

order to be valid, despite the legislature's use of the word "and." 86 Wn. App. at 174.

The court explained that

> [i]t is clear from a plain reading of the statute that the powers listed in paragraph (4) are the possible functions a public corporation may undertake. Nowhere does it appear from the statutory language that the corporation must undertake each and every function in order to be valid and legal. Nor does such an interpretation comport with common sense. Based upon the plain language and intent of the statute, a public corporation may undertake one or more of the functions listed in paragraph (4).

*Id.* at 174.

Interestingly, the State and Mr. Hodgins both invoke the canon of construction that the drafters of legislation are presumed to have used no superfluous words, requiring us to accord meaning, if possible, to every word in a statute. Br. of Appellant at 8-9; Br. of Resp't at 7-8, 14-15. Each argues that the other party's construction renders reference to one or the other statute superfluous. *Id.* But under neither party's construction is the reference to one statute superfluous. Under the State's construction, reference to both statutes is necessary because the legislative intent was to create a definition that captured acts of domestic violence under either statute. Under Mr. Hodgins's construction, both statutes are necessary because the legislative intent was to create a narrow definition by requiring that an act qualify as domestic violence under both.[3]

---

[3] If RCW 10.99.020 (being a non-exclusive list of crimes) were viewed as broad enough to capture all domestic violence captured by RCW 26.50.010—i.e, if RCW 26.50.010 is its subset—then both sides are right. Reference to RCW 10.99.020 would

We need not reach canons of construction, however, because we find that the legislature's use of the language *"has the same meaning as"* is a plain indication that the legislature intended a definition of "domestic violence" that was a union of the two existing statutory definitions, not their intersection. RCW 9.94A.030(20) (emphasis added). While it would be workable for the legislature to have treated only the intersection of the two statutory definitions as "domestic violence" for purposes of RCW 9.94A.525(21), that intersection cannot be said to "have the same meaning as defined in [ ] RCW 10.99.020 and 26.50.010"—or either of them, for that matter. Br. of Resp't at 7. It is only the union of the two statutory definitions that can be said to "have the same meaning as defined in [ ] RCW 10.99.020 and 26.50.010." *Id.*

We note that Division Two's decision in *Kozey*, 183 Wn. App. 692, offers additional legislative history in support of our construction of the 2010 amendments. We find it unnecessary to review that history.

Mr. Hodgins makes the alternative argument on appeal that the second of his present convictions for the phone calls placed to the protected person does not meet the definition of domestic violence under either RCW 10.99.020 or RCW 26.50.010, so that

---

be superfluous if the intent was to limit "domestic violence" to the intersection of the statutes, and RCW 26.50.010 would be superfluous if the intent was to define "domestic violence" as their union. We assume that under the rule of ejusdem generis RCW 10.99.020 would not be construed so broadly.

even if we construe the statute as advocated by the State, his prior misdemeanors should not count toward his offender score. While he did not seek cross-review, a prevailing party need not cross appeal a trial court ruling if it seeks no further affirmative relief. He may argue any ground to support a court's order that is supported by the record. *State v. Kindsvogel*, 149 Wn.2d 477, 481, 69 P.3d 870 (2003).

The telephone call violation does not qualify as "domestic violence" under RCW 26.50.010(1). Mr. Hodgins was incarcerated at the time he made the call, and the State did not allege nor present any evidence that his calls inflicted physical harm, injury, or that they constituted assault, sexual assault, or stalking.

Mr. Hodgins argues that the telephone calls made from jail also fail to meet RCW 10.99.020's definition of domestic violence as including "[v]iolation [by one household member against the other] of the provisions of a . . . no-contact order, or protection order restraining . . . the person from going onto the grounds of or entering a residence, workplace, school, or day care, or prohibiting the person from knowingly coming within, or knowingly remaining within, a specified distance of a location." RCW 10.99.020(5)(r). He argues that because he was in jail using a telephone when he violated the protection order, he could not and did not enter a residence, workplace, school, or day care or knowingly come or remain within a specified distance of a location.

11

His argument ignores the language of the statute. RCW 10.99.020(5)(r) requires that the restraining order violated contain provisions restraining or enjoining the person from "going onto the grounds of or entering a residence" or "knowingly coming within, or knowingly remaining within, a specified distance of a location," but it does not require that the person violated the order by engaging in that conduct. The terms of the order that Mr. Hodgins violated are not in the record on appeal but both the charging document and Mr. Hodgins' statement on plea of guilty indicate that he committed a felony violation, knowingly violating a no contact order while the order was in effect "by placing a phone call to the protected party" and having at least two previous convictions for violating such orders. CP at 23.

Mr. Hodgins' present convictions both fell within the definition of "domestic violence" under RCW 10.99.020. "Domestic violence" within the meaning of RCW 9.94A.030(20) was thereby pleaded and proved. His offender score should have been calculated to include a point for any prior repetitive domestic violence offenses.

We remand for resentencing consistent with this opinion.

Siddoway, C.J.

WE CONCUR:

Brown, J.

Korsmo, J.

12