72 P.3d 256 (2003)
117 Wash.App. 531
STATE of Washington, Respondent,
v.
Alfredo CHINO, Appellant.
No. 21186-0-III.
Court of Appeals of Washington, Division 3, Panel Eight.
July 8, 2003.
*257 Dennis W. Morgan, Attorney at Law, Ritzville, WA, for Appellant.
Lauri M. Boyd, Deputy Prosecuting Attorney, Yakima, WA, for Respondent.

*258 OPINION PUBLISHED IN PART
BROWN, C.J.
A jury convicted Alfredo Chino of single counts of intimidating a witness and assault in violation of a protection order. Because the intimidation elements instruction does not align with the charging document, we reverse the intimidation conviction. Otherwise, we reject Mr. Chino's remaining instructional, evidence, and improper comment contentions pertaining to the assault conviction in the unpublished portion of this opinion. Accordingly, we reverse in part and affirm in part.

FACTS
The State charged Mr. Chino by information with one count of intimidating a witness, RCW 9A.72.110(1)(d):
On or about November 22, 2001, in the State of Washington, by use of a threat directed at Candace A. Salinas, a current witness or a person you had reason to believe may have had information relevant to a criminal investigation, not to prosecute the crime, you attempted to induce that person to not report the information relevant to a criminal investigation or to not give truthful or complete information relevant to a criminal investigation.
Clerk's Papers (CP) at 47.
The State also charged Mr. Chino with one count of assault in violation of a protection order, domestic violence, RCW 26.50.110(1) and (4):
On or about November 22, 2001, in the State of Washington, knowing that a protection order, restraining order, or no contact order had previously been entered, you violated that order by knowingly violating a restraint provision, and/or by knowingly violating a provision excluding you from a residence, a workplace, a school, or a daycare, and/or by knowingly coming within, or knowingly remaining within, a specified distance of a location, and you intentionally assaulted Candace Salinas in a manner that does not amount to assault in the first or second degree.
Furthermore, you committed this crime against a family or household member.
CP at 47.
At trial, Ms. Salinas testified Mr. Chino hit her in the left eye. Asked by the State why Mr. Chino hit her at that time, Ms. Salinas responded, "Well, the only thing I could think of is that he was on drugs." Report of Proceedings (RP) at 112. The trial court overruled Mr. Chino's immediate relevancy objection. Ms. Salinas then testified Mr. Chino choked her and scratched her face. According to Ms. Salinas, Mr. Chino pinned her down and poked her other eye.
Asked if Mr. Chino had threatened her, Ms. Salinas testified:
Yeah. He told me that like if I were to go the cops and stuff that he wouldthat, you know, when he got out that he would, you know, beat me up and, you know, do everything again, you know, that, you know, because that he didn't care who I was with or where was I at, you know, that he would do it again.
RP at 119.
Ms. Salinas testified Mr. Chino prevented her from leaving the house. She fled the house when Mr. Chino took a shower, went to her brother's house and called the police.
The incident left Ms. Salinas with injuries to her face and neck. Color photographs of Ms. Salinas's injuries were taken at the police station and admitted into evidence.
At the start of the next day's hearing, Mr. Chino renewed his objection to Ms. Salinas's drug comment, partly arguing the testimony should have been excluded as unduly prejudicial under ER 403. He moved for a mistrial as well. The trial court overruled the objection and denied the mistrial motion, reasoning "the comment was of very short duration" and that the comment went to intoxication in general and "not the issue that Mr. Chino uses drugs." RP at 140-41.
And as I have said, the comment was such a momentary nature that it does not suggest that Mr. Chino was a bad person, quote, unquote, because he uses drugs. But, again, the emphasis was on the fact that she believed him to be intoxicated from drugs, which is the problem, and the *259 question and the answer in response. So I don't believe that it had any impact at all on the jury in terms of painting Mr. Chino as a drug user or not. Again, emphasizing the issue of possible intoxication as against being a bad person.
RP at 141.
Ms. Salinas admitted previously spending about a week in jail in connection with an unrelated theft conviction. In cross-examination, Ms. Salinas testified Mr. Chino's mother bailed her out of jail. When asked by defense counsel whether Mr. Chino wanted her bailed out, Ms. Salinas responded, "Yeah, because he was in jail." RP at 174. Defense counsel objected without stating a basis. The trial court overruled the objection and also denied defense counsel's request for a sidebar, apparently preferring to take the matter up at recess.
At the start of the next recess, the trial court invited defense counsel "to put something on the record or make a motion." RP at 180. Relying on ER 403, defense counsel renewed his earlier objection to Ms. Salinas's statement about Mr. Chino being in jail. The trial court responded: "Actually, the correct motion is that the answer was not responsive to the question. And if you had made that motion at that time I would have sustained it and told the jury to disregard it. I can tell them that if you wish when we reassemble." RP at 180-81. Defense counsel said he would first consult Mr. Chino and expressed concern regarding "undue emphasis." RP at 181. The trial court responded:
Yeah. You're actually right. It may be it just was a nonresponsive question. I don't think it was particularly prejudicial. It just was completely out of context to the question and maybe it would be better just to let sleeping dogs lie. But I'll do whatever you reasonably suggest.
RP at 181.
The trial court at times interjected its own objections to testimony from both sides. The following example occurred during Mr. Chino's cross-examination of Officer Jacob Church, the officer who interviewed Ms. Salinas:
Q. You would agree with me that when somebody is telling a story and not looking you in the eye sometimes it is because they are lying to you?
A. On occasion.
THE COURT: Bad question. You are not capable of nor is the witness in makingyou can ask the question but nobody can make that call.
Q. Have there been times when you've talked to people and they have not looked you in the eye?
A. Yes.
Q. And did you have suspicions at that time that they might be lying to you?
THE COURT: Same problem, [counsel].
[COUNSEL]: Judge, he can talk about his suspicions, can't he?
THE COURT: No. He cannot comment on apparent signs of whether a person is capable of telling the truth or not.
A. And Candace sometimes wouldn't look you in the eye, would she?
Q. There were times.
RP at 190-91.
Mr. Chino's uncle, mother, and younger sister testified on his behalf. Mr. Chino did not testify.
The defense did not object to the jury instructions. Instruction No. 6 partly states:
To convict the defendant of the crime of Intimidating a Witness, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about November 22, 2001, the defendant by use of a threat against a current or prospective witness attempted to induce that person to absent himself or herself from an official proceeding or induce that person not to report information relevant to a criminal investigation or induce that person not to have the crime prosecuted.
CP at 29.
Instruction No. 10 partly states:
To convict the defendant of the crime of Assault in Violation of a Protection Order, each of the following elements of the crime must be proved beyond a reasonable doubt:

*260 (1) That on or about November 22, 2001 the defendant willfully had contact with Candace Salinas;
(2) That such contact was prohibited by a protection order;
(3) That the defendant knew the existence of the protection order;
(4) That during the contact, the defendant intentionally assaulted Candace A. Salinas; and
(5) That the acts occurred in the State of Washington.
CP at 33.
The jury found Mr. Chino guilty of intimidating a witness, guilty of assault in violation of a protection order, and not guilty of theft.
At the sentencing hearing, both sides agreed to an offender score of three, one point for prior juvenile convictions, one point for a prior adult burglary conviction, and one point for "the concurrent counts." RP (May 29, 2002) at 9. The agreed standard range was 26 to 34 months on the intimidating conviction and 15 to 20 months on the assault conviction. The State asked for a high-end sentence of 34 months. Mr. Chino asked for a low to mid-range sentence of 26 to 20 months.
The trial court sentenced Mr. Chino to a high-end standard range sentence of 34 months on the intimidation conviction and a concurrent mid-standard range sentence of 18 months on the assault conviction. On the judgment and sentence form, the trial court found the intimidation and assault convictions did not encompass the same criminal conduct for purposes of calculating Mr. Chino's offender score.
Mr. Chino timely appealed both convictions and the sentence.

ANALYSIS

A. Instruction No. 6
Although the defense did not object to Instruction No. 6 at trial, the issue is whether the instruction was constitutionally deficient because of inconsistencies with the charging document.
This court reviews de novo whether a jury instruction accurately states the law without misleading the jury. State v. Linehan, 147 Wash.2d 638, 643, 56 P.3d 542 (2002). "Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law." State v. Clausing, 147 Wash.2d 620, 626, 56 P.3d 550 (2002) (citing State v. Riley, 137 Wash.2d 904, 908 n. 1, 909, 976 P.2d 624 (1999)).
Mr. Chino challenges the instructions for the first time on appeal. The constitution requires the jury be instructed on all essential elements of the crime charged. Linehan, 147 Wash.2d at 653, 56 P.3d 542; U.S. CONST. AMEND. VI; CONST. ART. I, § 22. An instruction that omits an essential element of a crime relieves the State of its burden of proving each element of the crime beyond a reasonable doubt. Id. at 654, 56 P.3d 542. Such an error is a violation of due process and harmless solely if the reviewing court is "convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error." Id. (citing State v. Easter, 130 Wash.2d 228, 242, 922 P.2d 1285 (1996)). Because jury instructions omitting elements of the charged crime constitute "a manifest error affecting a constitutional right," this court may consider the issue for the first time on appeal. RAP 2.5(a)(3); see State v. Eastmond, 129 Wash.2d 497, 502, 919 P.2d 577 (1996).
Generally, the crime upon which the jury is instructed is limited to the offense charged in the information. State v. Foster, 91 Wash.2d 466, 471, 589 P.2d 789 (1979). Recognized exceptions exist for situations where the defendant is convicted of a lesser included offense of the crime charged in the information, and where the defendant is convicted of a lesser degree of the crime specifically alleged in the information. Id.; see also State v. Peterson, 133 Wash.2d 885, 889, 948 P.2d 381 (1997).
Here, the information and Instruction No. 6 pertain to the same core crime, intimidation of a witness, but differed in alternative *261 means. In this connection, the applicable statute states:
A person is guilty of intimidating a witness if a person, by use of a threat against a current or prospective witness, attempts to:
(a) Influence the testimony of that person;
(b) Induce that person to elude legal process summoning him or her to testify;
(c) Induce that person to absent himself or herself from such proceedings; or
(d) Induce that person not to report the information relevant to a criminal investigation or the abuse or neglect of a minor child, not to have the crime or the abuse or neglect of a minor child prosecuted, or not to give truthful or complete information relevant to a criminal investigation or the abuse or neglect of a minor child.
RCW 9A.72.110(1).
"When a statute sets forth alternative means by which a crime can be committed, the charging document may charge none, one, or all of the alternatives, provided the alternatives charged are not repugnant to each other." State v. Williamson, 84 Wash. App. 37, 42, 924 P.2d 960 (1996) (citing State v. Noltie, 116 Wash.2d 831, 842, 809 P.2d 190 (1991); State v. Severns, 13 Wash.2d 542, 548, 125 P.2d 659 (1942); State v. Bray, 52 Wash.App. 30, 34, 756 P.2d 1332 (1988)); see also State v. Nicholas, 55 Wash.App. 261, 272, 776 P.2d 1385 (1989). Here, the information properly includes the relevant part of the alternative set forth in RCW 9A.72.110(1)(d), but does not include the other alternatives set forth in RCW 9A.72.110(1)(a) through (c). Understandably, Mr. Chino does not allege the information is deficient for omitting the remaining alternatives. Williamson, 84 Wash.App. at 42, 924 P.2d 960. Rather, he challenges the inclusion of uncharged alternatives within the "to convict" instruction.
Instruction No. 6 sets forth an uncharged statutory alternative, inducing the witness to absent himself or herself from legal proceedings. RCW 9A.72.110(1)(c). And the instruction includes part, but not all, relevant provisions of RCW 9A.72.110(1)(d). In this connection, the information alleges, among other things, Mr. Chino attempted to induce Ms. Salinas "to not give truthful or complete information relevant to a criminal investigation." CP at 47; see also RCW 9A.72.110(1)(d) (in part). That specific allegation is absent from Instruction No. 6.
Where the information alleges solely one statutory alternative means of committing a crime, it is error for the trial court to instruct the jury on uncharged alternatives, regardless of the strength of the trial evidence. Severns, 13 Wash.2d at 548, 125 P.2d 659; Williamson, 84 Wash.App. at 42, 924 P.2d 960; Nicholas, 55 Wash.App. at 272-73, 776 P.2d 1385; Bray, 52 Wash.App. at 34, 756 P.2d 1332. "One cannot be tried for an uncharged offense." Bray, 52 Wash.App. at 34, 756 P.2d 1332 (citing State v. Brown, 45 Wash.App. 571, 576, 726 P.2d 60 (1986)).
Here, it was error to instruct the jury on an alternative means not alleged in the information. Williamson, 84 Wash.App. at 42, 924 P.2d 960. Because the instructional error favored the prevailing party, it is presumed prejudicial unless it affirmatively appears the error was harmless. Bray, 52 Wash.App. at 34-35, 756 P.2d 1332.
Even so, the error may be harmless if other instructions clearly and specifically define the charged crime. Severns, 13 Wash.2d at 549, 125 P.2d 659; Nicholas, 55 Wash.App. at 273, 776 P.2d 1385. Here, no instructions define the alternative means. It therefore remains possible that the jury convicted Mr. Chino on the basis of the uncharged alternative. Accordingly, the error was not harmless. Reversal and remand for a new trial on the intimidation charge is necessary. In light of this conclusion, it is unnecessary to separately discuss whether it was error to fail to include an instruction on unanimity.

B. Instruction No. 10
The issue is whether Instruction No. 10 is constitutionally defective because it does not include the statutory exception for first and second degree assault.
Ordinarily, it is a gross misdemeanor for a restrained person to knowingly violate a protection *262 order. RCW 26.50.110(1). But it is a class C felony for the restrained person to commit an assault that is a violation of a protection order if the assault "does not amount to an assault in the first or second degree." RCW 26.50.110(4).
Here, the information alleged Mr. Chino "intentionally assaulted Candace Salinas in a manner that does not amount to assault in the first or second degree." CP at 47. But Instruction No. 10, the relevant "to convict" instruction, informed the jury that the State must prove beyond a reasonable doubt that "the defendant intentionally assaulted" Ms. Salinas. CP at 33. Mr. Chino contends Instruction No. 10 unconstitutionally omitted an essential element of the crime by failing to include the statutory exception for first and second degree assault.
The Supreme Court very recently held the first and second degree assault exception "does not function as an essential element of felony violation of a no-contact order but rather serves to explain that all assaults committed in violation of a no-contact order will be penalized as felonies." State v. Ward, 148 Wash.2d 803, 813, 64 P.3d 640 (2003) (citing RCW 26.50.110(4)). And the Ward court further held a charging document omitting the first and second degree assault exceptions did not omit an essential element of the crime of felony violation of a no contact order. Id. The Supreme Court affirmed a Division One opinion holding the first and second degree assault exceptions are not essential elements for purposes of an information alleging assault in violation of a no contact order. State v. Ward, 108 Wash. App. 621, 626-27, 32 P.3d 1007 (2001), aff'd, 148 Wash.2d 803, 64 P.3d 640 (2003). The State relies on Ward. By analogy, Ward supports the proposition that the first and second degree assault exception is not a necessary element for purposes of a "to convict" instruction alleging assault in violation of a protection order. See Ward, 148 Wash.2d at 813, 64 P.3d 640. Consequently, Mr. Chino's argument fails.
Accordingly, we reverse in part and affirm in part.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
WE CONCUR: SWEENEY and KURTZ, JJ.